******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CHRISTOPHER A. CLARK *v.* TOWN OF WATERFORD, COHANZIE FIRE DEPARTMENT ET AL.
## (SC 20630)

Robinson, C. J., and McDonald, D'Auria, Mullins, Ecker and Alexander, Js.*

*Syllabus*

Pursuant to statute (§ 7-433c (a)), "a uniformed member of a paid municipal fire department," who successfully passed a physical examination that failed to reveal any evidence of hypertension or heart disease before beginning such employment and then subsequently suffered any condition or impairment of health caused by hypertension or heart disease resulting in his disability, is entitled to "receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under [the Workers' Compensation Act] . . . from the municipal or state retirement system under which he is covered . . . . [These] benefits . . . shall be in lieu of any other benefits which such . . . fireman . . . may be entitled to receive from his municipal employer under the provisions of [the Workers' Compensation Act] or the municipal or state retirement system under which he is covered . . . ."

Pursuant further to statute (§ 7-433c (b)), "those persons who began employment on or after July 1, 1996, shall not be eligible for [heart and hypertension] benefits" under § 7-433c (a).

Pursuant further to statute (§ 7-425 (5)), "except as otherwise provided," the word "member," as used in part II of chapter 113 (title 7) of the General Statutes, "means any regular employee . . . receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in section 7-427, but shall not include any person who customarily works less than twenty hours a week . . . ."

The named defendant, the town of Waterford, Cohanzie Fire Department, appealed from the decision of the Compensation Review Board, which upheld the workers' compensation commissioner's decision that the plaintiff's claim for heart and hypertension benefits was compensable under § 7-433c (a). The town originally hired the plaintiff as a part-time firefighter in 1992, prior to which he passed a physical examination that revealed no evidence of heart disease or hypertension. In 1997, the town hired the plaintiff as a full-time firefighter, and, in 2017, he suffered a myocardial infarction and underwent quadruple bypass surgery. The plaintiff then filed a claim under § 7-433c seeking compensation for his heart disease, which the town contested as noncompensable on the ground that the plaintiff had not been employed as a full-time firefighter until 1997 and, therefore, did not qualify for benefits in light of § 7-433c (b). At a hearing before the commissioner, the plaintiff testified that, while employed as a part-time firefighter, he worked assigned shifts, and the number of shifts he was assigned to work was irregular, but he did not indicate the number of hours he customarily worked. The town reasoned that benefits under § 7-433c are available only to a "uniformed member of a paid municipal fire department" hired prior to July 1, 1996, the term "member" in § 7-433c is controlled by the definition of that term in § 7-425 (5), which excludes persons who customarily work less than twenty hours per week, and, because the plaintiff failed to establish that he customarily worked twenty hours or more per week when he was employed as a part-time firefighter, he was not eligible for benefits. The commissioner rejected the town's claim and ordered it to accept the plaintiff's myocardial infarction as compensable. In doing so, the commissioner made no finding as to the number of hours the plaintiff worked per week as a part-time firefighter. Instead, the commissioner noted that § 7-433c does not define the phrase "uniformed member of a paid municipal fire department" or distinguish between part-time and full-time employment and applied the common definition of the word "member" to conclude that the plaintiff's date of employment was in

1992 and that he therefore was entitled to benefits. The board upheld the commissioner's award of benefits, and the town appealed to the Appellate Court, which affirmed the board's decision. The Appellate Court observed that, although §§ 7-425 (5) and 7-433c are both contained within part II of chapter 113 of the General Statutes, they do not concern the same subject matter and could not be read together without reaching an absurd result, insofar as § 7-425 (5) defines terms related to the governance of the voluntary public pension plan provided by the state for participating municipalities and their employees and elected officials, including the term "member," which is defined therein as a regular employee who receives pay from a municipality that participates in that state retirement fund, whereas § 7-433c (a) mandates that municipal employers pay heart disease and hypertension benefits to qualified uniformed members of paid municipal fire departments, regardless of whether the municipality participates in the state retirement fund. The Appellate Court also concluded that the town's interpretation would lead to the absurd result that benefits under § 7-433c are available only to uniformed firefighters employed and paid by municipalities that participate in the state retirement fund. On the granting of certification, the town appealed to this court.

*Held* that the Appellate Court incorrectly determined that the definition of "member" in § 7-425 (5) does not affect eligibility for heart and hypertension benefits under § 7-433c, and, accordingly, this court reversed the judgment of the Appellate Court:

When considered in context, the language of §§ 7-425 (5) and 7-433c compelled the conclusion that the meaning of the word "member" in § 7-433c was controlled by the definition set forth in § 7-425 (5), especially in view of the relationship between § 7-433c and other statutes, the principle of statutory interpretation that the legislature, in amending or enacting statutes, is presumed to have created a harmonious and consistent body of law, and the absence of legislative history squarely supporting the proposition that the legislature did not intend the definition of "member" in § 7-425 (5) to apply to § 7-433c.

Section 7-425 clearly and unambiguously provides that, "except as otherwise provided," it governs the meanings of the statutes in part II of chapter 113 (title 7) of the General Statutes, that is the part of the General Statutes that provides for the establishment of the state retirement fund, tenets of statutory interpretation required this court to presume that the legislature acted consciously when it codified § 7-433c with the governing definitions in that part of the General Statutes, and, in view of the logical and factual relationship between heart and hypertension benefits and retirement benefits, as expressly and repeatedly recognized by the text of § 7-433c (a), this court assumed that the placement of § 7-433c was intentional, particularly when there were other logically suitable places in the General Statutes where that statute could have been codified, such as within the related provisions of the Workers' Compensation Act.

Moreover, because the legislature specifically defined the operative term "member" in § 7-425 (5), this court was bound to accept that definition unless it would create an irrational result that the legislature could not have intended.

Furthermore, insofar as the legislature expressly provided in § 7-433c for an independent definition of a different term, specifically that "municipal employer," as used in § 7-433c, would be defined by another statute (§ 7-467), it was evident that, if the legislature had desired to incorporate a different definition of "member" for purposes of heart and hypertension benefits eligibility, it could have done so, and, similarly, if the legislature had desired to provide more flexibility with respect to the eligibility for such benefits under § 7-433c, it could have done so by using broader terminology, such as "firefighter" instead of "a uniformed member of a paid municipal fire department," or, alternatively, more flexible phrasing in the definitions, as it did when it added the qualifier, "unless the context otherwise provides," in the context of the definitions applicable to the workers' compensation statutes.

Although the plaintiff, as a part-time firefighter, performed the same tasks as full-time firefighters, similarity in job function did not require the town to pay its part-time firefighters benefits under § 7-433c, as the terminology that the legislature used to describe the officials who are

eligible for benefits under § 7-433c was controlling, notwithstanding the similarity in the officers' respective job functions, this court disagreed with the plaintiff's claim and the Appellate Court's conclusion that applying the definition of "member" in § 7-425 (5) to § 7-433c necessarily would lead to an absurd result insofar as only those firefighters whose municipal employers have elected to participate in the state retirement fund can qualify for benefits under § 7-433c, and, to the extent that this court's construction of the plain and unambiguous statutory text of §§ 7-425 (5) and 7-433c could lead to results unintended by the legislature, that was not a reason to depart from the plain and unambiguous statutory text, as the legislature was free to clarify the meaning of § 7-433c if it desired to make it plain that any paid firefighter is eligible for benefits under that statute.

Because the commissioner did not apply the correct legal standard in failing to make a finding as to whether the plaintiff had customarily worked twenty hours or more per week before being hired as a full-time firefighter, the plaintiff was entitled to have the commissioner decide that factual issue, and, accordingly, the case was remanded for further proceedings.

(*One justice dissenting*)

Argued November 17, 2022—officially released June 20, 2023

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Second District finding that the plaintiff had sustained a compensable injury and awarding certain disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the named defendant appealed to the Appellate Court, *Bright, C. J.*, and *Moll* and *Clark, Js.*, which affirmed the decision of the Compensation Review Board, and the named defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Kyle J. Zrenda*, with whom was *James P. Berryman*, for the appellant (named defendant).

*Eric W. Chester*, for the appellee (plaintiff).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether a uniformed firefighter must "customarily" work twenty hours or more per week to be eligible for heart and hypertension benefits under General Statutes § 7-433c.[1] The named defendant, the town of Waterford, Cohanzie Fire Department (town),[2] appeals, upon our grant of its petition for certification,[3] from the judgment of the Appellate Court affirming the decision of the Compensation Review Board (board), which upheld the finding and award of the Workers' Compensation Commissioner for the Second District (commissioner),[4] ordering the town to accept as compensable a claim filed by the plaintiff, Christopher A. Clark, for heart disease benefits pursuant to § 7-433c. *Clark* v. *Waterford, Cohanzie Fire Dept.*, 206 Conn. App. 223, 224–25, 243, 261 A.3d 97 (2021). On appeal, the town claims that the Appellate Court incorrectly concluded that the definition of "member" in General Statutes § 7-425 (5),[5] which excludes "any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969," does not govern whether the plaintiff was "a uniformed *member* of a paid municipal fire department" for purposes of § 7-433c. (Emphasis added.) General Statutes § 7-433c (a). We agree with the town and, accordingly, reverse the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history, much of which is aptly set forth in the opinion of the Appellate Court.[6] "The town, a municipality organized under the laws of the state, hired the plaintiff as a part-time firefighter on May 24, 1992. Prior to being hired by the town, the plaintiff underwent and passed a physical examination that revealed no evidence of heart disease or hypertension.

"As a part-time firefighter in Waterford, the plaintiff's responsibilities included answering the telephone at the fire station, keeping the fire station clean, responding to medical and fire emergencies, and maintaining fire apparatus. When he was working, the plaintiff wore a uniform shirt, badge, belt, pants, and black shoes, which is what other firefighters also wore. He was issued fire protective gear in the event he had to respond to a fire call. In 1997, the plaintiff was hired by the town as a full-time firefighter.

"On or about June 24, 2017, the plaintiff suffered a myocardial infarction that required him to undergo quadruple bypass surgery. On August 14, 2017, the plaintiff filed a [f]orm 30C, seeking heart disease benefits under § 7-433c. Pursuant to General Statutes § 31-294c (b), the town gave notice of its intent to contest the compensability of the plaintiff's claim on the ground that he was not employed as a full-time firefighter until June 18, 1997, and therefore did not qualify for benefits

because § 7-433c (b) precludes benefits for persons who began their employment on or after July 1, 1996.

"The commissioner held a formal hearing on the plaintiff's claim on March 7, 2019. The plaintiff testified at the hearing, but he did not testify on direct examination as to the number of hours he customarily worked while he was employed as a part-time firefighter. On cross-examination, however, the plaintiff testified that he worked assigned shifts and that the number of shifts he was assigned varied from week to week. In light of the plaintiff's testimony regarding his other employment and the irregular number of hours he worked per week as a part-time firefighter, the town argued that the plaintiff had failed to establish that he customarily worked twenty hours or more per week prior to July 1, 1996." (Footnote omitted.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 226–27.

The town claimed before the commissioner that the plaintiff's failure to establish that he customarily worked twenty hours or more per week prior to July 1, 1996, was fatal to his claim for benefits under § 7-433c. See id., 227. Specifically, the town contended that "§ 7-433c benefits are available only to 'a uniformed *member* of a paid municipal fire department' hired . . . before July 1, 1996, and that the term *member*, as used in § 7-433c, is controlled by the definition set forth in § 7-425 (5)." (Emphasis in original.) Id. "Because *member* under § 7-425 (5) 'shall not include any person who customarily works less than twenty hours per week' and the plaintiff was not hired as a full-time firefighter until June 18, 1997, the town contended that the plaintiff was not entitled to § 7-433c benefits, as 'persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section.' General Statutes § 7-433c (b)." (Emphasis in original.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 227.

In his findings and award, the commissioner did not make a finding as to whether the plaintiff had worked twenty hours or more per week prior to being hired as a full-time firefighter on June 18, 1997.[7] Instead, the "commissioner decreed that § 7-433c does not define the phrase 'uniformed *member* of a paid municipal fire department' or distinguish between part-time and full-time employment status. . . . The commissioner, thus, determined that the plaintiff's date of employment was May 24, 1992, which was prior to July 1, 1996, and that he was entitled to benefits pursuant to § 7-433c. The commissioner ordered the town to accept the plaintiff's June 24, 2017 myocardial infarction as a compensable impairment of his health." (Emphasis in original.) Id., 228.

The town appealed from the decision of the commissioner to the board. Id., 229–30. The board concluded that, although "it [could not] reasonably be inferred

from the subordinate facts that the plaintiff worked more than twenty hours per week prior to the time he became a full-time firefighter on June 18, 1997";[8] id., 230–31; "applying the § 7-425 (5) definition to the plaintiff's claim would produce a result contrary to the letter and spirit of the heart and hypertension legislation, particularly in light of the plaintiff's long career with the town. The board, therefore, [upheld] the commissioner's award of § 7-433c benefits to the plaintiff and rejected the town's contention that the [commissioner incorrectly had applied] the common definition of the word *member*, rather than the statutory definition set forth in § 7-425 (5) . . . ." (Emphasis in original.) Id., 234. Accordingly, in a divided opinion, the board upheld the decision of the commissioner.[9] Id., 224.

The town appealed from the decision of the board to the Appellate Court. Id., 234. On appeal, the town renewed its claim that the definition of "member" set forth in § 7-425 (5) governed whether the plaintiff was eligible for benefits under § 7-433c as "a uniformed member of a paid municipal fire department" while he was employed by the town as a part-time firefighter. (Internal quotation marks omitted.) Id. Observing that this is an issue of first impression; id., 237; the Appellate Court cited *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277–78, 8 A.3d 1093 (2010), for the proposition that § 7-433c is workers' compensation legislation that is remedial in nature and, therefore, subject to a broad construction in favor of disabled employees. See *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 238. The Appellate Court then concluded that, although §§ 7-425 (5) and 7-433c "are both contained within part II of chapter 113 of the General Statutes, which is titled Retirement," they do not "concern the same subject matter" and "cannot be read together without reaching an absurd result." Id., 239. Specifically, the Appellate Court relied on the definition of "participating municipality," as set forth in § 7-425 (2) and mentioned in § 7-425 (5), which, it observed, "means a municipality that participates in the retirement fund" that is "governed by § 7-425 [namely] the voluntary public pension plan provided by the state for participating municipalities and their employees and elective officers [retirement fund]." (Internal quotation marks omitted.) Id., 240. Observing that "[n]ot all municipalities or departments participate in the retirement fund," the Appellate Court determined that § 7-433c (a) refers to General Statutes § 7-467[10] to incorporate a broader definition of "municipal employer" to make "clear that heart and hypertension benefits shall be paid . . . to a qualifying uniformed firefighter or regular member of a municipal police department, regardless of whether the municipality participates in the retirement fund." (Internal quotation marks omitted.) Id., 241. The Appellate Court further observed that "the town's interpretation also leads to an absurd result that heart and hypertension benefits are available only to uniformed

firefighters employed and paid by municipalities that participate in the retirement fund." Id., 242. To this end, the Appellate Court emphasized that "§ 7-425 explicitly provides that the definitions set forth therein shall apply 'except as otherwise provided' " and that "the use of the term *member* in § 7-433c is one of the exceptions expressly contemplated by § 7-425, itself." (Emphasis in original.) Id., 242–43. Accordingly, the Appellate Court rendered judgment affirming the decision of the board. Id., 243. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the town claims that the Appellate Court incorrectly concluded that the definition of "member" in § 7-425 (5) does not govern the plaintiff's eligibility for benefits under § 7-433c. Urging a strict construction of § 7-433c; see footnote 11 of this opinion; the town contends that the Appellate Court's construction of the statutes improperly disregarded the plain language of § 7-425 (5) and discounted the importance of the placement of § 7-433c in the part of the General Statutes that contains the provisions governing the municipal retirement fund. The town argues that the Appellate Court's construction of the statutes renders meaningless, redundant, and superfluous the words "paid" and "member" in § 7-433c. The town emphasizes that applying § 7-425 (5) to § 7-433c does not create an absurd or unworkable result given that it is well settled that § 7-433c is a legislative bonus; see, e.g., *Carriero* v. *Naugatuck*, 243 Conn. 747, 754–55, 760–61, 707 A.2d 706 (1998); *Grover* v. *Manchester*, 168 Conn. 84, 88–89, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975); with part-time employees often not being eligible for benefits otherwise given to full-time employees, such as retirement or vacation pay. Citing *Genesky* v. *East Lyme*, 275 Conn. 246, 266–67, 881 A.2d 114 (2005), the town emphasizes its prerogative under the statutory scheme to make staffing choices that would enable it to avoid liability under § 7-433c.

The plaintiff argues in response that the Appellate Court correctly concluded that the definition of "member" in § 7-425 (5) is inapplicable to the plain and unambiguous language of § 7-433c. The plaintiff argues that § 7-425 (5) is limited to the retirement fund insofar as its plain language, particularly its numerous exclusions for classifications such as teachers who are in the state retirement system, "repeatedly references retirement and pension systems." The plaintiff posits that § 7-433c benefits are related to but "distinct in purpose and scope from the rest of the retirement [fund] benefits." The plaintiff further argues that the town's construction of the statutes is inconsistent with our recent explication of eligibility for benefits under § 7-433c in *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 616–17, 149 A.3d 165 (2016). Citing, among other cases, *Grover* v. *Manchester*, supra, 168 Conn. 88, and the Appellate Court's decision in *Bucko* v. *New London*, 13 Conn.

App. 566, 569, 537 A.2d 1045 (1988), the plaintiff contends that the only restriction imposed on the word "member" under § 7-433c is that the member be "uniformed," which recognizes the risks associated with firefighting and law enforcement and distinguishes clerical or other employees from those who are eligible for benefits. The plaintiff also cited to *Bucko* in support of his argument that the Appellate Court had correctly determined that incorporating the definition from § 7-425 (5) would complicate the eligibility of police officers for benefits under § 7-433c and "produce an absurd and unworkable result by denying officers the benefits to which they are entitled under § 7-433c because their municipal employer does not participate in the voluntary [retirement fund]," insofar as "the benefits granted under § 7-433c are in no way related to or contingent [on] participation in the retirement [fund]." Finally, the plaintiff argues that the Appellate Court's construction of the statutes is compatible with this court's decision in *Genesky* v. *East Lyme*, supra, 275 Conn. 246, because both cases involved a straightforward interpretation of the plain language of § 7-433c. We, however, agree with the town and conclude that the definition of "member" in § 7-425 (5) governs eligibility for benefits under § 7-433c.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . .

"In addition, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under" the Workers' Compensation Act, General Statutes § 31-275 et seq.[11] (Citation omitted; internal quotation marks omitted.) *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 862–63,

224 A.3d 1161 (2020). It is axiomatic that we follow the plain meaning rule set forth in General Statutes § 1-2z in construing statutes, including § 7-433c. See, e.g., *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 613–14; *Genesky* v. *East Lyme*, supra, 275 Conn. 253–54.

By way of background, we note that "§ 7-433c simply [provides] special compensation, or even an outright bonus, to qualifying [police officers] and fire[fighters], [and] serves a proper public purpose . . . . [T]he outright bonus provided by the statute is that the claimant is not required to prove that the heart disease is causally connected to this employment, which he would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act. . . . Thus, although [the Workers' Compensation Act] is used . . . as a *procedural avenue* for administration of the benefits under § 7-433c . . . an award under § 7-433c is not a workers' compensation award. . . . Therefore, although this court has recognized that the type and amount of benefits available pursuant to § 7-433c are the same as those under the Workers' Compensation Act . . . the *liability* for payment of those benefits is not." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bergeson* v. *New London*, 269 Conn. 763, 777–78, 850 A.2d 184 (2004); see, e.g., *King* v. *Sultar*, 253 Conn. 429, 438–39, 444, 754 A.2d 782 (2000); *Carriero* v. *Naugatuck*, supra, 243 Conn. 754–55.

We begin with the text of § 7-433c (a), which provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event *a uniformed member of a paid municipal fire department* or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, *shall receive from his municipal employer compensation and medical care* in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, *and from the municipal or state retirement system under which he is covered,* he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. . . . *The benefits provided by this*

*section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered,* except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467." (Emphasis added.)

The single issue of statutory construction presented in this appeal is whether we must construe the word "member" in the phrase "a uniformed member of a paid municipal fire department," as used in § 7-433c (a), in accordance with its ordinary meaning, pursuant to which the plaintiff would be eligible for benefits under § 7-433c, or in accordance with the definition provided by § 7-425 (5). Section 7-425 provides in relevant part: "The following words and phrases *as used in this part, except as otherwise provided,* shall have the following meanings:

* * *

"(5) 'Member' means any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in section 7-427, *but shall not include any person who customarily works less than twenty hours a week* if such person entered employment after September 30, 1969, any police officer or firefighter who will attain the compulsory retirement age after less than five years of continuous service in fund B . . . ." (Emphasis added.)

Although the Appellate Court's construction of the statutes at issue was reasonable for purposes of the § 1-2z analysis given the broad construction that we extend to § 7-433c; see footnote 11 of this opinion; the issue before us in this appeal is ultimately resolved by the language of the statutes when considered in context, particularly in the absence of legislative history to provide square support for the proposition that the legislature did not intend the definition of "member" in § 7-425 (5) to apply. When statutory language, even if ambiguous for purposes of § 1-2z, provides greater support for an interpretation of the statute than does the legislative history, we must yield to the implications of the statutory language, particularly when the legislative history is more general in nature and does not furnish any evidence of legislative intent with respect to the specific point of law at issue.[12] See *Butts* v. *Bysiewicz*, 298 Conn. 665, 687–88, 5 A.3d 932 (2010) ("we see no evidence in the legislative history to undermine the construction to which the text itself is most conducive"); cf. *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003) (emphasizing that, even under purposive approach to

statutory interpretation that preceded enactment of § 1-2z, language remains "the most important factor to be considered," and that "the more strongly the bare text supports such a meaning, the more persuasive the extra-textual sources of meaning will have to be in order to yield a different meaning"). That language compels the conclusion that the meaning of "member," as used in § 7-433c, is controlled by § 7-425 (5), given the relationship between § 7-433c and other statutes and the cardinal principle of interpretation "that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 36, 268 A.3d 630 (2022).

First, § 7-425 clearly and unambiguously provides that, "except as otherwise provided," it governs the meanings of the statutes in part II of chapter 113 (title 7) of the General Statutes, which provides for the establishment of the retirement fund as a voluntary system in which municipalities may elect to participate to provide for their employees' retirement benefits. See General Statutes § 7-427 (a). We must presume that the legislature acted consciously when it codified § 7-433c in that part, with its governing definitions. As one leading authority on statutory interpretation emphasizes, "in the construction of a particular code section, attention should be given to the entire chapter, or even the entire code, to determine the purpose and objective of the legislature in organizing the material. Under some circumstances the placement or rearrangement of code sections may be helpful to determine [the] proper construction of the statute. When sections originally enacted independently are consolidated into a single chapter of a code, they are ordinarily read together as a single act." (Footnotes omitted.) 1A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2009) § 28:11, p. 637; see, e.g., *Unite New Mexico* v. *Oliver*, 438 P.3d 343, 352 (N.M. 2019) (transfer of statute governing straight ticket voting out of chapter giving New Mexico secretary of state authority over form of ballot suggested that secretary was not authorized to decide questions relating to straight ticket voting). The text of § 7-433c expressly recognizes the logical and factual relationship between heart and hypertension benefits and retirement benefits in multiple places. See General Statutes § 7-433c (a) (obligating "[the] municipal employer" of eligible police officer or firefighter, or "the municipal or state retirement system under which [the eligible police officer or firefighter] is covered," to pay death or disability benefits under statute and providing that such "benefits . . . shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered").

Given this relationship, we must assume that this placement was intentional, particularly in view of the availability of other logically suitable codification options, such as within the related provisions of the Workers' Compensation Act.[13] Cf. *Genesky* v. *East Lyme*, supra, 275 Conn. 252 n.9 ("[a]lthough an award of benefits under § 7-433c is not a workers' compensation award, the Workers' Compensation Act is used as a 'procedural avenue' for the administration of benefits under § 7-433c").

Thus, consistent with § 1-2z, we turn to the precept that, "[when] the legislature has specifically defined an operative term used within a statute, we are bound to accept that definition . . . unless to do so would create an irrational result that could not have been intended by the legislature." (Citation omitted.) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 349, 612 A.2d 1203 (1992); see id., 350 (it was not irrational to apply statutory definition of "compensation" to allow double recovery via both payment of benefits under Workers' Compensation Act and award of federal Veterans Administration benefits because "the legislature rationally could have intended to prohibit double recovery under [General Statutes] § 31-349 (a) only to the extent that an employee may not recover twice for the same injury under the . . . Workers' Compensation Act"); see also, e.g., *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 156, 12 A.3d 948 (2011) ("[b]ecause the legislature has not defined motor vehicle violation, but has defined violation, we conclude that it is reasonable to apply the definition of violation to the phrase motor vehicle violation").

We disagree with the plaintiff's argument that § 7-433c functions as an implied exception to § 7-425 (5). This interpretation of § 7-433c as implying a different definition of the word "member" is belied by the fact that the legislature expressly provided therein for an independent definition of a different term, namely, "municipal employer." The legislature specifically stated in § 7-433c (a) that the term "municipal employer," as used therein, would be defined by § 7-467; see footnote 10 of this opinion; which provides the definitions applicable to the statutes governing collective bargaining between municipalities and their employees. The legislature's failure to provide a different definition of "member" in § 7-433c is telling, insofar as the referenced provision, § 7-467, has a subsection that provides its own definition of "employee" that excludes certain part-time employees.[14] Particularly given the codification of § 7-433c in the municipal retirement statutes, it is evident that, had the legislature desired to incorporate a different definition of "member" for purposes of eligibility, it could have done so. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, supra, 342 Conn. 36 ("the legislature's inclusion of a [bona fide occupational qualification] exception in [General Statutes]

§ 46a-60 (b) (1) demonstrates that the legislature could have provided such an exception in the public accommodation statute but consciously elected not to do so").

Similarly, had the legislature desired to provide more flexibility with respect to the eligibility of firefighters for benefits under § 7-433c, such as by using the more inclusive word "firefighter" as in the related workers' compensation statutes; see General Statutes § 31-275 (1) (A) (i) (defining, "[f]or a police officer or firefighter, [the phrase] 'in the course of his employment'"); it could have done so by using broader terminology. See, e.g., *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) (noting "[the] well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)). Alternatively, the legislature could have used more flexible phrasing in the definition, as it did when it added the qualifier, "unless the context otherwise provides," with respect to the definitions applicable to the workers' compensation statutes. General Statutes § 31-275; see *Vincent* v. *New Haven*, 285 Conn. 778, 788, 941 A.2d 932 (2008) (under General Statutes § 31-306, specific definition of "the term 'compensation' is expressly limited to payments for burial expenses and weekly payments that represent a percentage of the deceased employee's average weekly earnings").

We recognize that the plaintiff, as a part-time firefighter, performed the same tasks as the full-time firefighters employed by the town. This similarity in job function does not, however, mean that the town was required to pay its part-time firefighters benefits under § 7-433c. As this court held in concluding that a full-time constable employed by a town was not "a regular member of a paid municipal police department" eligible for benefits under § 7-433c, "there is a difference between a paid municipal police department and a constabulary, and the town has chosen to ensure public safety by establishing a constabulary." (Internal quotation marks omitted.) *Genesky* v. *East Lyme*, supra, 275 Conn. 252–53. Thus, the legislature's use of certain terminology to describe those officials who are eligible for benefits under § 7-433c is controlling, notwithstanding the similarity in those officers' job functions.

We similarly disagree with the plaintiff's contention that the Appellate Court's decision in *Bucko* v. *New London*, supra, 13 Conn. App. 566, supports his eligibility for benefits under § 7-433c. In that case, the Appellate Court held that the hiring of a police officer in a temporary capacity, with his mild hypertension diagnosis having occurred prior to his promotion to a permanent position, did not render him ineligible for benefits under § 7-433c. See id., 567–69, 571. The Appellate Court rejected the city's argument that the police officer's

initial temporary appointment put him "outside the eligibility requirements of § 7-433c," observing that "[n]owhere in § 7-433c is there a requirement that any appointment to the regular police force must be a 'permanent' appointment. The qualifiers 'permanent' or 'temporary' are not mentioned in the statute; the only stated prerequisite to the collection of benefits is that the claimant must be a '*regular* member of a paid municipal police department.' " (Emphasis in original.) Id., 570. The Appellate Court's decision in *Bucko* is inapposite because that case did not involve the construction of the word "member," as used in § 7-433c, and did not consider the effect the number of hours per week the claimant worked had on his eligibility for benefits.[15]

Finally, we disagree with the plaintiff's argument that incorporating the definition of "member" from § 7-425 (5) means that only those firefighters or police officers whose employers have elected to participate in the retirement fund may qualify for benefits under § 7-433c. Specifically, the plaintiff observes that § 7-425 defines a "member" as one who "receiv[es] pay from a participating municipality"; General Statutes § 7-425 (5); and defines the phrase "participating municipality" separately, as "any municipality that has accepted this part, as provided in section 7-427 . . . ." General Statutes § 7-425 (2). As the Appellate Court observed in determining that this interpretation of the language of §§ 7-425 (5) and 7-433c would lead to an absurd result; see *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 242; applying the definition to this extent could have significant effects with respect to the eligibility of firefighters or police officers who are employed by some of Connecticut's largest municipalities, some of which—such as New Haven and Stamford—are not participating municipalities. See Office of the State Comptroller, Retiree Resources, "Who Is in CMERS? Participating Municipalities," available at https://www.osc.ct.gov/rbsd/cmers/plandoc/MasterTownListSept132016.pdf (last visited June 14, 2023); see also *Clark* v. *Waterford, Cohanzie Fire Department*, supra, 241. We do not, however, agree that this result necessarily follows from our holding that the definition of "member" in § 7-425 (5) controls under § 7-433c with respect to the hourly requirement for eligibility. First, § 7-425 (5) uses punctuation to phrase separately its exclusion of "any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969," from its description of a "member" as one who "receiv[es] pay from a participating municipality . . . ." Second, the language of § 7-433c is—at best—ambiguous with respect to the issue of whether a firefighter or police officer must be employed by a "participating municipality," given the ample references in § 7-433c to the retirement system under which the employee is covered, which is broader in concept than a simple reference to the retirement fund. See General Statutes

§ 7-433c (a) (referring to "the *municipal* or state retirement system under which [the member] is covered" (emphasis added)). Moreover, the independent definition in § 7-433c (a) of the term "municipal employer" by reference to § 7-467, as the entity liable to pay the benefits, is itself broader than "participating municipality." Accordingly, we conclude that applying the hourly eligibility requirement in the definition of "member" in § 7-425 (5) to § 7-433c will not necessarily lead to an absurd result.

To the extent "our analysis of the plain and unambiguous statutory text of [§§ 7-425 (5) and 7-433c] may lead to a result that might well have been unintended by the legislature . . . this effect is not a reason to depart from the plain and unambiguous statutory text . . . ." (Citation omitted.) *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, supra, 342 Conn. 42–43. Should the legislature desire to clarify the meaning of § 7-433c to make it plain that *any* paid firefighter is eligible for benefits under that statute, it may certainly do so, given its role as "the policy-making branch of our government."[16] Id., 43; see, e.g., *International Business Machines Corp.* v. *Brown*, 167 Conn. 123, 135–36, 355 A.2d 236 (1974) (The court observed that policy arguments with respect to a use tax on certain tangible personal property "might better be advanced before the General Assembly. Questions of policy are for its consideration. We can . . . take the statutes [only] as they have been enacted." (Internal quotation marks omitted.)).

Because the commissioner did not apply the correct legal standard in failing to make a finding as to whether the plaintiff had customarily worked the requisite twenty hours per week prior to his hiring as a full-time firefighter, the plaintiff is entitled to have the commissioner decide that factual issue.[17] Further proceedings are therefore required to determine his eligibility for benefits under § 7-433c. See, e.g., *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 323–24, 953 A.2d 13 (2008) (concluding that "additional fact-finding proceedings [were] required because the record . . . [did] not permit us to uphold the decision of the board under the correct legal standard, and also [did] not permit us to direct judgment in favor of the defendants because [despite the existence of evidence in the record] the commissioners [did] not [make] any findings with respect to the apportionment or proportional reduction . . . of the plaintiff's benefits" (citation omitted)); cf. *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 564, 108 A.3d 1110 (2015) (concluding that commissioner's existing findings permitted court to remand case to board with direction to make award in accordance with those findings).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the decision of the Compensation Review Board

and to remand the case to the board for it to reverse the commissioner's decision and to remand the case to the commissioner for further proceedings according to law.

In this opinion McDONALD, D'AURIA, MULLINS and ALEXANDER, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Ecker and Alexander. Although Chief Justice Robinson was not present at oral argument, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] General Statutes § 7-433c provides: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event *a uniformed member of a paid municipal fire department* or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467.

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section." (Emphasis added.)

[2] As the Appellate Court observed, the "defendant Connecticut Interlocal Risk Management Agency appeared before the commissioner but did not appear before the board [or] file a brief in the present appeal." *Clark* v. *Waterford, Cohanzie Fire Dept.*, 206 Conn. App. 223, 224 n.1, 261 A.3d 97 (2021).

[3] We granted the town's petition for certification to appeal, limited to the following issue: "Did the Appellate Court incorrectly determine that the definition of the term 'member' in General Statutes § 7-425 (5) is inapplicable to . . . § 7-433c?" *Clark* v. *Waterford, Cohanzie Fire Dept.*, 338 Conn. 916, 259 A.3d 1181 (2021).

[4] "We note that General Statutes . . . § 31-275d (a) (1), effective as of October 1, 2021, provides in relevant part that '[w]herever the words "workers' compensation commissioner," "compensation commissioner" or "commissioner" are used to denote a workers' compensation commissioner in [several enumerated] sections of the [G]eneral [S]tatutes, [including sections contained in the Workers' Compensation Act, § 31-275 et seq.] the words "administrative law judge" shall be substituted in lieu thereof . . . .'

"As all events underlying this appeal occurred prior to October 1, 2021, we will refer to the workers' compensation commissioner [whose decisions are at issue] in this matter as the commissioner . . . ." *Arrico* v. *Board of Education*, 212 Conn. App. 1, 4 n.4, 274 A.3d 148 (2022).

[5] General Statutes § 7-425 provides in relevant part: "The following words

and phrases as used in this part, except as otherwise provided, shall have the following meanings:

\* \* \*

"(5) 'Member' means any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in section 7-427, but shall not include any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969, any police officer or firefighter who will attain the compulsory retirement age after less than five years of continuous service in fund B . . . ."

Although § 7-425 was the subject of a technical amendment in 2021; see Public Acts 2021, No. 21-40, § 4; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[6] For purposes of brevity, we recite only the most salient facts and procedural history. For a full recitation, including the parties' arguments before the commissioner, the board, and the Appellate Court, see *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 226–36.

[7] "In his findings and award, the commissioner found that, while the plaintiff was a part-time firefighter, the number of hours he worked per week was consistent and was affected by the time of year, as well as the vacation, sick time, and any injuries sustained by the full-time staff. Some weeks he was assigned to work multiple shifts, and other weeks he was not assigned to work. As a part-time employee of the town, the plaintiff did not receive any holiday or vacation pay or benefits toward a pension. In 1997, the town employed the plaintiff as a full-time firefighter and paid him accordingly. Part-time and full-time firefighters were paid by the town, and their duties were the same." *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 228.

[8] The board determined that the "evidence demonstrated that the plaintiff was assigned shifts on an irregular basis and that his assignments depended on circumstances that varied according to the time of year and the internal staffing requirements of the [town fire] department and did not provide an adequate basis for determining the number of hours the plaintiff worked. Although the board found the commissioner's use of the word *consistent* to describe the number of hours the plaintiff worked to be 'inartful,' it found that the balance of the commissioner's findings accurately reflected the plaintiff's testimony." (Emphasis in original.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 231.

[9] One member of the board, William J. Watson III, dissented, agreeing with the town's statutory arguments, based on the plain language and codification placement of the provisions at issue, that the definition of "member" in § 7-425 (5) controlled eligibility for benefits under § 7-433c. Given the record before the board, the dissenting member concluded that the plaintiff's claim was not compensable because "the factual circumstances of the [plaintiff's] employment [did not] satisfy the statutory requirements of § 7-433c."

[10] General Statutes § 7-467 (1) provides: " 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law, a private nonprofit corporation which has a valid contract with any town, city, borough or district to extinguish fires and to protect its inhabitants from loss by fire, and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees . . . ."

[11] We acknowledge the town's argument that, in providing for heart and hypertension benefits, § 7-433c is special " 'bonus legislation,' " the eligibility for which must be strictly construed under the board's decision in *Gaudett* v. *Bridgeport Police Dept.*, No. 6337, CRB 4-19-7 (September 8, 2021), rev'd, 218 Conn. App. 720, 293 A.3d 351 (2023). In *Gaudett*, the board followed the strict construction approach with respect to eligibility for benefits under § 7-433c that it first articulated in *Genesky* v. *East Lyme*, No. 4600, CRB 8-02-12 (December 8, 2003), aff'd, 275 Conn. 246, 881 A.2d 114 (2005). See *Gaudett* v. *Bridgeport*, supra, No. 6337, CRB 4-19-7. The board's decision in *Genesky* relied on the axiom that statutory provisions that are in derogation of the common law must be strictly construed, in support of the proposition that the "original intent of the legislation was to provide a remedy to qualifying persons without the need to prove traditional elements of causation under the Workers' Compensation Act. Thus, the eligibility requirements set out in the statute must be strictly construed." *Genesky* v. *East Lyme*, supra, No. 4600, CRB 8-02-12.

This strict approach to the interpretation of § 7-433c conflicts with three decades of case law from this court, beginning with *Szudora* v. *Fairfield*, 214 Conn. 552, 573 A.2d 1 (1990), which acknowledged its nature as a special bonus for qualified police officers and firefighters but considered § 7-433c to be analogous to "workers' compensation legislation, [which] because of its remedial nature, should be broadly construed in favor of disabled employees." Id., 557–58; see, e.g., *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 863, 224 A.3d 1161 (2020); *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 613; *Carriero* v. *Naugatuck*, supra, 243 Conn. 761–62. Indeed, the concurring opinion in this court's decision in *Genesky*, in which the majority affirmed the decision of the board in that case, expressly applied that broader construction in considering whether a constable was "a member of 'a paid municipal police department' " eligible for § 7-433c benefits. *Genesky* v. *East Lyme*, supra, 275 Conn. 268–69 (*Borden, J.*, concurring); see id., 278–79 (*Borden, J.*, concurring) (concluding that statute was ambiguous for purposes of § 1-2z, in part based on "[the] judicial interpretive maxim regarding § 7-433c [that] supports a broad interpretation of the phrase 'municipal police department' as applied to the facts of [that] case"); cf. id., 253–54 (majority opinion followed § 1-2z without reference to any rules of construction). Because the town does not ask us to overrule or to otherwise limit this body of case law, we continue to follow this rule of broad construction in determining questions of eligibility for benefits under § 7-433c.

[12] Thus, we emphasize that the legislative history of the statute does not illuminate the meaning of the word "member" or suggest that the definition in the chapter does not apply. Numerous cases provide a detailed review of the "rather tumultuous" history of "Connecticut's statute providing benefits for police and fire personnel who suffer from hypertension or heart disease," including decisions from this court considering the constitutionality of its various iterations. (Internal quotation marks omitted.) *Morgan* v. *East Haven*, 208 Conn. 576, 580, 546 A.2d 243 (1988); see, e.g., *Bergeson* v. *New London*, supra, 269 Conn. 777 n.10; *Morgan* v. *East Haven*, supra, 580–81; *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667–69, 425 A.2d 131 (1979); see also *Grover* v. *Manchester*, supra, 168 Conn. 86, 88–89 ("[the] outright bonus" provided by current version of statute to qualifying police and fire personnel was not unconstitutional taking); *Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971) (conclusive presumption in 1969 version of statute violated due process clauses of Connecticut and United States constitutions).

To the extent the dissent relies on the legislative history of § 7-433c in support of the proposition that the legislature intended to provide a broad benefit to *all* paid firefighters and police officers in Connecticut, without qualification, we respectfully disagree. See part III of the dissenting opinion. In our view, the generalized statements of purpose on which the dissent relies are not sufficiently persuasive on this point to counter the weight of the statutory language.

[13] We acknowledge that "the codification of a public act of the state is an administrative duty of the legislative commissioners" under General Statutes § 2-56 (g) and that, although it "is within their discretion to arrange and codify public acts . . . they are not lawmakers." *Fava* v. *Arrigoni*, 35 Conn. Supp. 177, 178, 402 A.2d 356 (1979); see id., 179 (defining terms of General Statutes (Rev. to 1979) § 52-563a, enacted as § 6 of No. 75-637 of the 1975 Public Acts (P.A. 75-637), "in a manner consistent with other sections of P.A. 75-637," with this "construction . . . made more obvious by the omission of any definitions in chapter 925 of the General Statutes, the chapter in which § 6 of P.A. 75-637 (§ 52-563a) is found"). Nevertheless, we deem the placement of § 7-433c to be instructive in its interpretation given both (1) the presumption that the legislature is aware of the law and decisions construing it, and (2) the long-standing codification of heart and hypertension benefits in chapter 113, governing municipal retirement benefits, both before and after the enactment of § 7-433c as § 1 of No. 524 of the 1971 Public Acts, particularly given the reference therein to the definition of "municipal employer" in § 7-467. See, e.g., *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 606–607, 255 A.3d 851 (2020) (stating presumption); *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667–68, 425 A.2d 131 (1979) (emphasizing amendments to make state retirement system applicable to heart and hypertension benefits); *Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971) (invalidating conclusive presumption in General Statutes (Rev. to 1969) § 7-433a); cf. *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 159, 12 A.3d 948 (2011) ("The plaintiff seems to assert that a breach of [General Statutes] § 14-227a is a motor vehicle violation simply because of its placement within the motor vehicle chapter. We disagree. At the time § 14-227a was originally enacted in 1963, the Penal Code did not exist. See Public Acts 1963, No. 616, § 1. The Penal Code was not adopted until 1969, approximately six years after the legislature decided to criminalize [operating] under the

influence in § 14-227a. Because the Penal Code did not exist at the time the legislature adopted § 14-227a, its placement within the motor vehicle statutes has no impact on determining legislative intent.").

[14] See General Statutes § 7-467 (2) (" '[e]mployee' means any employee of a municipal employer, whether or not in the classified service of the municipal employer, except elected officials, administrative officials, board and commission members, certified teachers, *part-time employees who work less than twenty hours per week on a seasonal basis*, department heads and persons in such other positions as may be excluded from coverage under sections 7-467 to 7-477, inclusive, in accordance with subdivision (2) of section 7-471" (emphasis added)).

[15] We similarly disagree with the plaintiff's reliance on our recent decision in *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 607. In *Holston*, we held that a police officer's failure to assert a timely claim for hypertension benefits did not bar his separate, otherwise timely, claim for heart disease benefits, notwithstanding the link between his hypertension and heart disease. See id., 615–16. *Holston* is inapposite because that case did not concern the effect of a particular police officer's employment status on his eligibility for benefits under § 7-433c, and we were not called on to construe the term "member" when we stated that the plain language of § 7-433c has five health related requirements and "contains no other requirements to qualify for its benefits." Id., 616–17.

[16] Accordingly, we respectfully disagree with the dissent's emphasis on the novelty of the claim in this appeal, relative to the existence of § 7-433c, as counseling in favor of the plaintiff's interpretation of the statute. See parts I and III of the dissenting opinion. The relative novelty of the defendants' claim tells us that this is not a case in which the issue is new to the appellate courts, but one in which the commission has had a time-tested administrative construction of § 7-433c, to which we would customarily defer. See, e.g., *Crandle* v. *Connecticut State Employees Retirement Commission*, 342 Conn. 67, 83–84, 269 A.3d 72 (2022). Thus, to the extent the legislature deems our interpretation of § 7-433c to be inconsistent with the purpose of the statute, it remains free to address that via the adoption of clarifying legislation that "in effect construes and clarifies a prior statute [and that] must be accepted as the legislative declaration of the meaning of the original act. . . . An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." (Internal quotation marks omitted.) *Praisner* v. *State*, 336 Conn. 420, 429, 246 A.3d 463 (2020); see id. ("[t]o determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity" (internal quotation marks omitted)).

[17] As was discussed several times during oral argument before this court, the town's claims presented a novel legal issue under § 7-433c with respect to the plaintiff's burden of proof. In light of his interpretation of § 7-433c, and the inconclusive evidence in the record, the commissioner ultimately deemed it unnecessary to decide this factual question in either his memorandum of decision or in acting on the town's motions for articulation and to correct.